IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-CV-28-D

ANDREA BIGELOW, individually and )
on behalf of all others similarly situated, )
)
Plaintiff, )
)
v. ) **ORDER**
)
SYNEOS HEALTH, LLC, )
)
Defendant. )

On October 7, 2019, Andrea Bigelow ("plaintiff" or "Bigelow") filed a class action complaint in the United States District Court for the Middle District of Florida against Syneos Health, LLC ("defendant" or "Syneos"), alleging both interference and retaliation in violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et. seq., and its implementing regulations [D.E. 1]. On January 23, 2020, the Middle District of Florida transferred the action to this district [D.E. 17]. On February 7, 2020, Syneos filed a partial motion to dismiss and to strike the class claims and a supporting memorandum [D.E. 20, 21]. On March 13, 2020, Bigelow moved for leave to file an amended complaint and filed a supporting memorandum [D.E. 24, 25]. On March 26, 2020, Syneos responded in opposition [D.E. 26]. As explained below, the court grants Syneos's partial motion to dismiss, dismisses Bigelow's FMLA interference claim, strikes Bigelow's class claims, and denies as futile Bigelow's motion to amend.

I.

Bigelow is a resident of St. Johns County, Florida. See Compl. [D.E. 1] ¶ 11. Bigelow telecommutes from her home in St. Johns County for her job as a Clinical Operations Lead at

Syneos. See id. at ¶¶ 10–11. Syneos is a "biopharmaceutical solutions organization" that employs 22,000 employees globally. Id. at ¶¶ 8–9 (quotation omitted). Bigelow has worked for Syneos since July 10, 2017, and reports to Syneos's headquarters in North Carolina. See id. at ¶¶ 10–11.

From April 1, 2019, through May 29, 2019, Bigelow used FMLA leave due to the birth of her child. See id. at ¶ 14. At the end of her FMLA leave, Bigelow "returned to work without consequence at that time, and commenced her job duties and responsibilities without issue." Id. at ¶ 15. In August 2019, Bigelow "discovered that [Syneos] promoted one of her male peers, who had not recently utilized FMLA, into a position of Senior Clinical Operations Lead." Id. at ¶ 16. She believes that she was as qualified, if not more qualified, than this peer. See id. at ¶ 17. On August 30, 2019, Syneos management told Bigelow that, per company policy, employees are ineligible for promotions that occur during their FMLA leave. Id. at ¶ 19. According to Bigelow, Syneos management "corroborated that [Syneos] uniformly and negatively considered its employees' use of FMLA leave in making promotion decisions, pay decisions, and/or taking adverse employment actions against with regard to its employees." Id. at ¶ 20.

On September 9, 2019, Bigelow emailed Syneos management and asked management to describe other factors besides FMLA leave that led to her failure to receive a promotion. See id. at ¶ 24. On September 13, 2019, Bigelow and Syneos management met for a second time. See id. at ¶ 25. Syneos management confirmed Syneos's policy concerning FMLA leave and promotion. See id. at ¶ 26. Bigelow notified Syneos management "that it was illegal for management to use her FMLA against her as part of the promotion process." Id. at ¶ 27. On September 27, 2019, the Syneos's Human Resources Manager confirmed this policy. See id. at ¶ 28. On October 7, 2019, Bigelow filed suit. See id.

2

Bigelow makes two claims under the FMLA and asserts them as part of a proposed class action. First, Bigelow alleges FMLA interference because Syneos negatively considered her FMLA leave in an employment decision. See id. at ¶¶ 43–48. Second, Bigelow alleges FMLA retaliation because Syneos considered her FMLA leave when it failed to promote her. See id. at ¶¶ 49–55. Bigelow seeks, inter alia, class certification, compensatory damages, liquidated damages, interest, reasonable attorneys' fees, and costs. See id. at 9.

II.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[ ] [her] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

3

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court may also consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity." Goines, 822 F.3d at 166. Additionally, a court may take judicial notice of public records without converting the motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

"The FMLA provides covered employees with two types of rights and protections." Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 546 (4th Cir. 2006). First, the FMLA contains prescriptive protections that "set substantive floors for conduct by employers, and creating entitlements for employees." Id. (alteration and quotation omitted). For example, under the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period" for, inter alia, "the birth of a son or daughter of the employee and in order to care for such son or daughter." 29 U.S.C. § 2612(a)(1). Second, the FMLA "contains proscriptive provisions that protect employees from discrimination or retaliation for exercising their substantive rights." Yashenko, 446 F.3d at 546. Within its proscriptive provisions, the FMLA distinguishes between interference claims and retaliation claims. See id. at 546–51. Interference claims stem from section 2615(a)(1), which states that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1); see 29 C.F.R. § 825.220(c). Retaliation claims, by contrast, originate from section 2615(a)(2), which states that "[i]t shall be unlawful for any employer to discharge or in any other

4

manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). Specifically, "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions." 29 C.F.R. § 825.220(c).

"To make out an 'interference' claim under the FMLA, an employee must thus demonstrate that (1) [s]he is entitled to an FMLA benefit; (2) [her] employer interfered with the provision of that benefit; and (3) that interference caused harm." Adams v. Anne Arundel Cty. Pub. Sch., 789 F.3d 422, 427 (4th Cir. 2015); see Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002); cf., e.g., Corbett v. Richmond Metro. Transp. Auth., 203 F. Supp. 3d 699, 709 (E.D. Va. 2016) (delineating a five-part test). "When the eligible employee returns from leave, he or she must 'be restored by the employer to the position of employment held by the employee when the leave commenced,' or 'be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.'" Anderson v. Sch. Bd. of Gloucester Cty., Virginia, No. 3:18CV745, 2020 WL 2832475, at *29 (E.D. Va. May 29, 2020) (unpublished) (quoting 29 U.S.C. §§ 2614(a)(1)(A) and 2614(a)(1)(B)).

As for the first factor, the parties agree that Bigelow was entitled to FMLA leave. In fact, Bigelow received FMLA leave from April 1, 2019, through May 28, 2019, "returned to work without consequence at that time, and commenced her job duties and responsibilities without issue." Compl. at ¶¶ 14, 15. As for the second factor, Bigelow has not plausibly alleged that Syneos "interfered with the provision of that [FMLA leave] benefit." Adams, 789 F.3d at 427; Corbett, 203 F. Supp. 3d at 709–10. Syneos cannot interfere with Bigelow's FMLA leave if she has taken the FMLA leave that she was entitled to take. See Anderson, 2020 WL 2832475, at *29; Downs v. Winchester Med. Ctr., 21 F. Supp. 3d 615, 619 (W.D. Va. 2014); see also Seeger v. Cincinnati Bell Tel. Co., LLC, 681 F.3d

5

274, 283 (6th Cir. 2012); Campbell v. Costco Wholesale Corp., No. 3:12-CV-00306, 2013 WL 5164635, at *5 (M.D. Tenn. Sept. 12, 2013) (unpublished).

As for the third factor, Bigelow has not plausibly alleged that she suffered harm from Syneos's interference, even assuming such interference occurred. See Compl. at ¶¶ 8–34. Syneos restored Bigelow to the same position that she held when the leave commenced: Clinical Operations Lead. See 29 U.S.C. § 2614(a)(1)(A). Any harm that Bigelow suffered came after her leave, not before it. Thus, the proper claim to remedy Bigelow's alleged harm concerning the promotion is not an FMLA interference claim, but an FMLA retaliation claim. See, e.g., Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 146 n.9 (3d Cir. 2004), modified by Erdman v. Nationwide Ins. Co., 582 F.3d 500 (3d Cir. 2009); Dotson v. Pfizer, Inc., 558 F.3d 284, 294–95 (4th Cir. 2009); Sumner v. Mary Washington Healthcare Physicians, No. 3:15-CV-42, 2015 WL 3444885, at *6 (E.D. Va. May 28, 2015) (unpublished); Downs, 21 F. Supp. 3d at 617–18. Accordingly, Bigelow has not plausibly alleged an FMLA interference claim. Thus, the court dismisses count one.

III.

Syneos has moved to strike Bigelow's class action claims in count one (i.e., FMLA interference) and two (i.e., FMLA retaliation). See [D.E. 20]. The court has dismissed count one for failure to state a claim under Rule 12(b)(6). Thus, the court analyzes the class action claims concerning count two.

Federal Rule of Civil Procedure 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Federal Rule of Civil Procedure 23(c)(1)(A) provides that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). "Sometimes the issues are plain enough

6

from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the [class] certification question." Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160 (1982).

Generally, when viewing Rule 12(f) and Rule 23 in tandem, courts rarely make a class determination at the pleading stage. See, e.g., Williams v. Potomac Family Dining Grp. Operating Co., LLC, No. GJH-19-1780, 2019 WL 5309628, at *5 (D. Md. Oct. 21, 2019) (unpublished); see, e.g., Letart v. Union Carbide Corp., No. 2:19-CV-00877, 2020 WL 2949781, at *2 (S.D. W. Va. June 3, 2020) (unpublished); Alig v. Quicken Loans Inc., No. 5:12-CV-114, 2015 WL 13636655, at *3 (N.D. W. Va. Oct. 15, 2015) (unpublished). However, "a motion to dismiss a complaint's class allegations should be granted when it is clear from the face of the complaint that the plaintiff cannot and could not meet Rule 23's requirements for certification because the plaintiff has failed to properly allege facts sufficient to make out a class or could establish no facts to make out a class." Williams, 2019 WL 5309628, at *5 (alteration and quotation omitted). Although a plaintiff retains the burden of proving class certification, a court analyzes a pre-discovery challenge to class certification under "the familiar standard of review for motions to dismiss under Rule 12(b)(6)." Id.

Syneos seeks to strike the class claims and argues that Bigelow improperly alleges a "fail-safe" class. See [D.E. 21] 9–11; [D.E. 26] 6–7. A fail-safe class is one that "is defined so that whether a person qualifies as a member [of the class] depends on whether the person has a valid claim." EQT Prod. Co. v. Adair, 764 F.3d 347, 360 n.9 (4th Cir. 2014) (quoting Messner v. Northshore Univ. HealthSys., 669 F.3d 802, 825 (7th Cir. 2012)).

Fail-safe classes are considered improper for two reasons. First, in a fail-safe class, "a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by

7

the judgment." Messner, 669 F.3d at 825. Hence, fail-safe classes "fail to provide the resolution of the claims of all class members that is envisioned in class action litigation." Young v. Nationwide Mut. Ins. Co., 693 F.3d 532, 538 (6th Cir. 2012).

Second, fail-safe classes do not comply with Rule 23. See Fed. R. Civ. P. 23. Specifically, Rule 23 requires that members of a proposed class be readily identifiable, a principle called "ascertainability." Krakauer v. Dish Network, L.L.C., 925 F.3d 643, 655 (4th Cir. 2019). "Under this principle, . . . a class cannot be certified unless a court can readily identify the class members in reference to objective criteria." Id. (quotations omitted). In certifying a class, however, a court may not "conduct a preliminary inquiry into the merits of a suit." Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 177 (1974). Specifically, "class litigation should not move forward when a court cannot identify class members without 'extensive and individualized fact-finding or mini-trials.'" Krakauer, 925 F.3d at 658. (quoting EQT Prod. Co., 764 F.3d at 358). Because a fail-safe class requires a court to inquire into the merits of the underlying case to identify the members of the class, fail-safe class definitions violate these principles. See, e.g., Chado v. Nat'l Auto Inspections, LLC, No. JKB-17-2945, 2019 WL 1981042, at *4, (D. Md. May 3, 2019) (unpublished).

Although the Supreme Court has not addressed the fail-safe class question, nearly every circuit court of appeals to address the question considers fail-safe classes improper. See, e.g, Orduno v. Pietrzak, 932 F.3d 710, 716–17 (8th Cir. 2019); Cordoba v. DIRECTV, LLC, 942 F.3d 1259, 1276–77 (11th Cir. 2019); McCaster v. Darden Rests., Inc., 845 F.3d 794, 799–800 (7th Cir. 2017);[1]

---

[1] The McCaster court addressed a fail-safe class in the employment context. In McCaster, the Seventh Circuit held that a class definition that "sought to represent a class of '[a]ll persons separated from hourly employment with [Darden] in Illinois between December 11, 2003, and the conclusion of this action[ ] who were subject to Darden's Vacation Policy . . . and who did not receive all earned vacation pay benefits" was impermissible because the class definition "plainly turn[ed] on whether the former employee ha[d] a valid claim." 845 F.3d at 799.

8

Torres v. Mercer Canyons, Inc., 835 F.3d 1125, 1138 n.7 (9th Cir. 2016); In re Nexium Antitrust Litig., 777 F.3d 9, 22 & n.19 (1st Cir. 2015); Byrd v. Aaron's, Inc., 784 F.3d 154, 167 (3d Cir. 2015); Randleman v. Fidelity Nat'l Title Ins. Co., 646 F.3d 347, 352 (6th Cir. 2011); but see In re Rodriguez, 695 F.3d 360, 370 (5th Cir. 2012) ("our precedent rejects the fail-safe class prohibition"). Additionally, numerous treatises discuss the impermissibility of fail-safe classes. See, e.g., 7A Wright & Miller, Fed. Prac. & Proc. § 1760 & n.14.55 (discussing how the Third Circuit and "[o]ther courts . . . have ruled that requiring fail-safe classes for certification is improper"); Herr, Annotated Manual for Complex Litig. § 21.222 ("The order defining the class should avoid . . . terms that depend on resolution of the merits."); 1 Rubenstein, Newberg on Class Actions § 3:6 ("Class definitions that require a court to decide the merits of prospective individual class members' claims to determine class membership—sometimes referred to as 'fail-safe' classes—may also run afoul of the definiteness requirement.").

Bigelow's proposed class is an impermissible fail-safe class. Bigelow frames her proposed class as:

> Any and all employees who worked for Defendant during the relevant limitations period who were denied promotions, pay increases, and/or suffered any adverse employment action, as a result of her/his/their prior or anticipated use of protected FMLA leave during her/his/their employment.

Compl. at ¶ 3. This class definition turns on whether the employee has a valid claim, and "[t]hat is a classic fail-safe class." McCaster, 845 F.3d at 799. To illustrate, if plaintiff fails to prove (1) that a particular employee experienced adverse promotion, pay, or employment actions or (2) that Syneos took such actions because the employee used or planned to use FMLA leave, then Syneos is entitled to a judgment in its favor with respect to that employee. Cf. Compl. at ¶ 3. The court, however, could not enter a judgment against that particular employee because that employee would

9

no longer fit the class definition. See McCaster, 845 F.3d at 799; Young, 693 F.3d at 538; Messner, 669 F.3d at 825; Genenbacher v. CenturyTel Fiber Co. II, 244 F.R.D. 485, 487–88 (C.D. Ill. 2007). Bigelow's fail-safe class defines itself based on legal conclusions and impermissibly constitutes "a class that cannot be defined until the case is resolved on its merits." Young, 693 F.3d at 538; see Wilkinson v. Greater Dayton Reg'l Transit Auth., No. 3:11-CV-247, 2017 WL 3578702, at *7 (S.D. Ohio Aug. 17, 2017) (unpublished). A fail-safe class action leaves a defendant in a "heads, I win . . . tails, I can sue again" situation, contravening the truism that class actions should "resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011) (emphasis added). Accordingly, the court strikes Bigelow's class action claim in count two.

IV.

Bigelow has moved for leave to file an amended complaint. See [D.E. 24]. Federal Rule of Civil Procedure 15 states that "[a] party may amend its pleading once as a matter of course." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "[L]eave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986); see Foman v. Davis, 371 U.S. 178, 182 (1962). "A proposed amendment is . . . futile if the claim it presents would not survive a motion to dismiss." Save Our Sound OBX, Inc. v. N. Carolina Dep't of Transp., 914 F.3d 213, 228 (4th Cir. 2019); see Perkins v. United States, 55 F.3d 910, 917 (4th Cir. 1995).

10

Bigelow's proposed amended complaint is futile. It adds nothing material to the court's analysis concerning either the FMLA interference claim or the class action claim. Instead, Bigelow has proposed only minor changes such as alleging that "Plaintiff did not, in fact, return to work without consequence from her FMLA leave," including a citation to 29 C.F.R. § 825.220(c), and asserting that "Defendant utilizes the taking of and/or FMLA leave as a negative factor in employment actions . . . ." Am. Compl. [D.E. 24-1] ¶¶ 29, 30, 33. As for whether Bigelow returned to work without consequence, the court has considered that issue in ruling on the motion to dismiss. As for 29 C.F.R. § 825.220(c), the court has considered the regulation in its ruling. As discussed, the regulation informs Bigelow's FMLA retaliation claim, not her FMLA interference claim. See, e.g., Seeger, 681 F.3d at 283; Conshenti, 364 F.3d at 146 n.9; Downs, 21 F. Supp. 3d at 617–18. As for whether Syneos considers FMLA as a negative factor, the court has already assumed the veracity of this allegation and considered it in ruling on the motion to dismiss. Accordingly, the court denies Bigelow's motion to amend as futile.

V.

In sum, the court GRANTS defendant's partial motion to dismiss, DISMISSES WITH PREJUDICE plaintiff's FMLA interference claim, STRIKES WITHOUT PREJUDICE plaintiff's class claims [D.E. 20], and DENIES as futile plaintiff's motion to amend [D.E. 24].

SO ORDERED. This 27 day of August.

JAMES C. DEVER III
United States District Judge